UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

I. RUTH PROFITT,
    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:13-cv-679
Spiegel, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's applications for disability insurance benefits (DIB) and supplemental security income (SSI). This matter is before the Court on plaintiff's Statement of Errors (Doc. 11), the Commissioner's response in opposition (Doc. 16), and plaintiff's reply memorandum. (Doc. 17).

**I. Procedural Background**

Plaintiff protectively filed applications for DIB and SSI in April 2010, alleging disability since May 1, 2008, due to fibromyalgia, chronic back pain, a heart condition and severe depression. (Tr. 217).[1] These applications were denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing before administrative law judge (ALJ) Amelia G. Lombardo. Plaintiff and a vocational expert (VE) appeared and testified at the ALJ hearing. On February 9, 2012, the ALJ issued a decision denying plaintiff's DIB and SSI applications. Plaintiff's request for review by the Appeals Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner.

---

[1] The page numbers referenced herein are taken from the administrative record.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment - *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities - the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.; Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548

(6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. The [plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2013.
>
> 2. The [plaintiff] has not engaged in substantial gainful activity since May 1, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The [plaintiff] has the following severe impairments: fibromyalgia, heart problems, depression (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) subject to the following restrictions and limitations: She is limited to unskilled low stress work. For [plaintiff], low stress work means she cannot be subject to assembly line production quotas and her work tasks cannot be fast-paced.
>
> 6. The [plaintiff] is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).[2]
>
> 7. The [plaintiff] was born [in] . . . 1964 and was 44 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

---

[2] Plaintiff's past relevant work was as a customer service representative and an insurance agent. (Tr. 20).

3

8. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).[3]

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from May 1, 2008, through the date of [the ALJ's] decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 16-22).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the

---

[3] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform 12,000 light unskilled jobs in the regional economy, such as mail clerk and injection molding machine tender. (Tr. 21, 47-48).

Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

### D. Specific Errors

On appeal, plaintiff alleges that the ALJ erred by failing to find her disabled as a result of her mental impairments. (Doc. 11). Plaintiff presents only a single assignment of error, but she argues that reversal of the ALJ's decision and remand of this matter is warranted on three grounds. First, plaintiff alleges that the ALJ erred by giving "great weight" to the opinion of the consultative examining psychologist, Dr. James Rosenthal, Psy.D. (Doc. 11 at 12-17). Second, plaintiff alleges that the RFC formulated by the ALJ is unsupported because it is not based on a specific medical opinion. (Doc. 11 at 19-20). Third, plaintiff alleges that this matter should be reversed and remanded for consideration of new and material evidence which was submitted to the Appeals Council for its review. (*Id.* at 17-19; Doc. 17 at 5).

#### 1. Weight given to the examining psychologist

"In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525,

5

530-31 (6th Cir. 1997). *See also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) ("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference."). A non-treating source's opinion is weighed based on the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(3)-(6), 416.927(c)(3)-(6); *Wilson*, 378 F.3d at 544. The opinion of a non-treating but examining source is generally entitled to more weight than the opinion of a non-examining source. *Ealy v. Commissioner of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010) (citation omitted); *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007)). Because a non-examining source has no examining or treating relationship with the claimant, the weight to be afforded the opinion of a non-examining source depends on the degree to which the source provides supporting explanations for his opinions and the degree to which his opinion considers all of the pertinent evidence in the record, including the opinions of treating and other examining sources. 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3).

Here, there is no opinion by a treating mental health source that the ALJ was required to weigh or give deference. The only assessments of plaintiff's mental health functioning were rendered by the consultative examining psychologist, Dr. Rosenthal, and the non-examining state agency psychologists, Drs. Paul Tangeman, Ph.D., and John Waddell, Ph.D. Dr. Rosenthal evaluated plaintiff on behalf of the state agency on June 30, 2010. (Tr. 407-11). Plaintiff reported a history of two hospitalizations for depression. (Tr. 408). The most recent hospitalization occurred four years prior to the date of the consultative exam. (*Id.*). The earlier hospitalization occurred 15 years before the exam date and involved a course of treatment with ECT (electroconvulsive therapy). (*Id.*). Plaintiff reported experiencing episodes of depression

6

and receiving treatment with medication since approximately 1997, and she stated that her current medications were helpful. (*Id.*). Plaintiff reported that she had last worked two years earlier for an insurance company for six months before being laid off, and prior to that she had worked for another insurance agency for 23 years until she was eventually laid off from that position. (*Id.*). She reported that she had problems getting to work during the last five years on that job because of physical problems and depressed mood, although she had no difficulty understanding assigned work tasks and no social problems on the job. (*Id.*). On mental status examination, plaintiff was alert and oriented, her eye contact was good, she was able to follow and understand directions, and there were no issues with flow of conversation and thought. (Tr. 409). Her affect appeared depressed, she reported feeling depressed and sad "most days," and she related that she thought she had been depressed "on and off for 20 years." (*Id.*). She reported her energy level was low and she had no motivation or interest to do the things she had previously enjoyed. Plaintiff reported that she shared household duties with her boyfriend and his mother, with whom she resided in a house; she drove once a day and shopped twice weekly; she bathed every other day; she did not read regularly due to concentration problems and she watched television about an hour each day; during the day she cleaned, did laundry, and paced the floor; she watched her 17 month old grandchild for a couple of hours a few days each week; she had some contact with relatives; and she had no regular social activities. (*Id.*). Dr. Rosenthal diagnosed plaintiff with major depression and assigned her a GAF score of 60[4] based on her reported symptoms of depression and her functioning, noting that plaintiff ran errands as needed and took care of her personal needs every day. (Tr. 410). He opined that her level of psychosocial impairment was moderate. (*Id.*).

---

[4] GAF is a clinician's subjective rating, on a scale of zero to 100, of an individual's overall psychological functioning. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 503 n. 7 (6th Cir. 2006). A GAF of 51-60 indicates "moderate symptoms (*e.g.*, flat affect and circumstantial speech, occasional panic attacks), or moderate difficulty in social, occupational, or school functioning (*e.g.*, few friends, conflicts with peers or co-workers)." *Id.* at 503 (citing Diagnostic and Statistical Manual of Mental Disorders (4th ed., Text Revision 2000) (DSM-IV-TR), p. 34).

Dr. Rosenthal assessed the following level of work-related functional impairment: plaintiff's ability to understand, remember and follow simple one or two step job instructions was not impaired; her ability to relate to bosses, coworkers and the general public was mildly impaired due to her depressed mood and low energy; her ability to tolerate the stress of day-to-day employment was moderately impaired due to her depressed mood, low concentration, and low energy; and her ability to sustain attention and concentration to complete daily work tasks was moderately impaired due to her depressive symptoms. (Tr. 411).

The ALJ gave Dr. Rosenthal's opinion "great weight." (Tr. 17-18). The ALJ determined that Dr. Rosenthal's assessment was consistent with other evidence in the record and was supported by his own findings. (Tr. 18, 20). Specifically, the GAF score assigned by Dr. Rosenthal was indicative of moderate functioning; plaintiff described participating in a normal range of activities of daily living; and she had not received "significant" mental health treatment, having failed to follow through with counseling or to cooperate when taken to the emergency room on two occasions. (Tr. 19-20). Moreover, the ALJ noted that there was no treating source opinion finding that plaintiff was disabled by her mental impairments. (Tr. 20). The ALJ concluded that a restriction to low stress, slow paced work adequately accommodated plaintiff's depression and any psychomotor slowing resulting from her medication regime. (*Id.*).

Plaintiff challenges the ALJ's decision to give "great weight" to Dr. Rosenthal's opinion on two grounds. First, plaintiff alleges that in rendering his assessment of plaintiff's mental functioning, Dr. Rosenthal demonstrated a misunderstanding of the Social Security rules and regulations, which do not require that a claimant be in "a vegetative state in order to receive benefits." (Doc. 11 at 13). Plaintiff alleges that in assessing her mental functioning, Dr. Rosenthal improperly relied on her ability to run errands as needed, care for her personal needs,

and engage in some contact with her relatives, which she contends do not demonstrate an ability to interact with others without difficulty or to perform mental activities over a sustained period of time. (*Id.*). Second, plaintiff contends that the ALJ was not entitled to rely on Dr. Rosenthal's opinion because it was issued on June 30, 2010, and is not substantial evidence that plaintiff was not disabled after that date. (*Id.* at 14). To the contrary, plaintiff alleges that the longitudinal record shows that her condition worsened after Dr. Rosenthal evaluated her.

Upon review of the ALJ's decision and the record evidence, the Court finds that the ALJ did not err by crediting Dr. Rosenthal's opinion. The ALJ reasonably determined that Dr. Rosenthal's opinion was supported by both his findings and the other evidence of record. First, contrary to plaintiff's position, Dr. Rosenthal did not rely on a few isolated factors in assessing plaintiff's mental functioning. Rather, Dr. Rosenthal considered plaintiff's family, educational, health, psychiatric and employment history; performed a mental status examination; considered plaintiff's activities of daily living; and assessed her current symptoms and functioning based on all of the information before him. (Tr. 407-11).

Second, the ALJ was not required to discount Dr. Rosenthal's opinion simply because it was issued in June 2010, more than one year before the ALJ issued her decision. There is no categorical requirement that a non-treating source's opinion be based on a "complete or more detailed case record to constitute substantial evidence"; the opinion need only be "supported by evidence in the case record." *Seider v. Astrue*, No. 1:11-cv-153, 2012 WL 641942, at *4 (S.D. Ohio Feb. 28, 2012) (citing *Helm v. Comm'r of Soc. Sec. Admin.*, 405 F. App'x 997, 1002 (6th Cir. 2011) (quoting SSR 96-6p, 1996 WL 374180, at *2 (1996)). To show that Dr. Rosenthal's report is not supported by the case record because her mental condition worsened after he examined her, plaintiff cites treatment records dated January 18, 2011 through October 3, 2011 prepared by

9

psychiatrist Dr. Emad Alshami, M.D., and licensed social workers with a program known as "Solutions."[5] (Doc. 11 at 15-18). However, the ALJ considered this evidence and reasonably determined that it did not contradict Dr. Rosenthal's report. The ALJ noted that plaintiff had been seen at Solutions between January and May 2011 following Dr. Rosenthal's examination; however, plaintiff had attended only a "few" sessions and left the program contrary to medical advice after failing to show for three appointments with her therapist. (Tr. 19, citing Tr. 563-97). She was eventually discharged from the program in October 2011 after having last been seen in May 2011, with no overall progress in her treatment noted, due to her failure to follow up with appointments and to respond to attempts to contact her. (Tr. 563-65). Plaintiff continued to report and exhibit symptoms of depression during her treatment at Solutions. (*See, e.g.*, Tr. 589, 595, 1/8/11- plaintiff reported at initial evaluation that she had no energy, she felt hopeless, and she did not care about anything; Tr. 571, 3/31/11- plaintiff reported feeling depressed, sad, irritable, and easily distracted and experiencing anger outbursts, low energy and fatigue; Tr. 569, 4/29/11- plaintiff reported feeling depressed, hopeless and helpless with poor concentration and low energy and her mood/affect was depressed; Tr. 567, 5/27/11- plaintiff reported feeling worse on Paxil and depressed, she was very somatic and non-compliant with treatment, and she displayed multiple symptoms of borderline personality; Tr. 564, 10/3/11- plaintiff described during last session in May feeling frustrated that nothing seemed to be working to help her depression). However, while plaintiff's depressive symptoms were repeatedly documented, the symptoms were consistently assessed by her treating mental health sources to be of moderate severity. (Tr. 592, 1/18/11- diagnosis of Bipolar I disorder with current depression-moderate; Tr. 573, 3/31/11-

---

[5] The records show that plaintiff's initial evaluation was completed by licensed social worker Mark Phillips, LSW (Tr. 585-97), and that Mr. Phillips saw plaintiff again in March 2011. (Tr. 581-584). Plaintiff subsequently saw Dr. Alshami a total of three to four times in March, April and May 2011 before she was discharged from Solutions in October 2011. (Tr. 563-80).

recurring depression, moderate impairment, GAF 60; Tr. 563-64, 10/3/11- no change over course of treatment in initial diagnosis of Bipolar I current depression- moderate). In addition, the ALJ acknowledged that plaintiff had been taken to the hospital emergency room twice in 2011 for psychiatric treatment and was admitted once.[6] (Tr. 19-20). However, upon discharge from that hospitalization, the records noted her mood was good, she was stable and functioning, and her GAF was 65, which is indicative of mild symptoms or difficulties in functioning. (*Id*. at 20).

Thus, the ALJ considered the longitudinal medical record and the evidence that post-dates Dr. Rosenthal's June 2010 report. The medical evidence supports Dr. Rosenthal's findings that plaintiff's depressed mood, low concentration and low energy imposed moderate limitations on her ability to tolerate the stress of day-to-day employment and to sustain attention and concentration to complete daily work tasks. (Tr. 411). The ALJ did not err by affording great weight to Dr. Rosenthal's opinion finding moderate limits during the period of alleged disability.

### 2. Whether the mental RFC finding is supported by the medical opinion evidence

Plaintiff alleges that the RFC formulated by the ALJ is unsupported because it is not based on a specific medical opinion. (Doc. 11 at 19-20). Plaintiff contends that the ALJ did not specify a medical opinion on which she based her RFC finding and instead arbitrarily substituted her opinion for that of a competent medical source. Plaintiff asserts that the ALJ's mental RFC finding was not as restrictive as that found by the state agency reviewing psychologists, who

---

[6] Plaintiff notes that there was a third hospitalization in September 2011, with an admitting diagnosis of "[a]ltered mental state secondary to polysubstance abuse." (Doc. 11 at 17, citing Tr. 537). Plaintiff left the hospital against medical advice within 48 hours of that admission. (*Id*.).

11

limited plaintiff to no frequent changes in the work environment.[7] (*Id.* at 19, citing Tr. 61).

Physicians render opinions on a claimant's RFC, but the ultimate responsibility for determining a claimant's capacity to work lies with the Commissioner. *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010) (citing 42 U.S.C. § 423(d)(5)(B); *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 578 (6th Cir. 2009)). *See also* 20 C.F.R. §§ 404.1546(c), 416.946(c) (the responsibility for assessing a claimant's RFC lies with the ALJ). Here, the ALJ reasonably fashioned an RFC limiting plaintiff to "unskilled low stress work," *i.e.*, no assembly line production quotas and no fast-paced work tasks, based on Dr. Rosenthal's assessment of moderate impairment in plaintiff's mental ability to handle work stress and sustain concentration to complete work tasks. (Tr. 18, 20). The ALJ was entitled to credit Dr. Rosenthal's opinion finding moderate limitations in plaintiff's mental functioning for the reasons discussed above. Accordingly, the ALJ did not err by rendering an RFC finding that is unsupported by the medical opinion evidence.

### 3. Whether a Sentence Six remand is warranted

Plaintiff seeks a remand under Sentence Six of 42 U.S.C. § 405(g) for administrative consideration of evidence submitted to the Appeals Council for its review following the ALJ hearing. When the Appeals Council declines review, it is the decision of the ALJ and therefore the facts before the ALJ that are subject to appellate review. *Cotton v. Sullivan*, 2 F.3d 692, 695-96 (6th Cir. 1993). The Court may not consider new evidence presented to the Appeals Council in deciding whether to uphold, modify, or reverse the ALJ's decision. *Id.* at 696. *See*

---

[7] State agency reviewing psychologist Dr. Tangeman opined in July 2010 that plaintiff had moderate limitations in the ability to understand, remember and carry out detailed instructions; complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; and respond appropriately to changes in the work setting. (Tr. 61-62). He concluded that plaintiff could understand, remember and carry out 2 and 3 step tasks in an environment without frequent changes or fast-paced production demands. (*Id.*)

*also Cline v. Comm'r of Social Security*, 96 F.3d 146, 148 (6th Cir. 1996). "The district court can, however, remand the case for further administrative proceedings in light of the evidence, if a claimant shows that the evidence is new and material, and that there was good cause for not presenting it in the prior proceeding." *Cline*, 96 F.3d at 148. Evidence is "new" if it was not in existence or available to the claimant at the time of the administrative proceeding. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Evidence is considered "material" if "there is a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." *Id.* (citations and internal quotation marks omitted). To show "good cause" the moving party must present a valid justification for the failure to have acquired and presented the evidence in the prior administrative proceeding. *Id.* See also *Oliver v. Sec'y of H.H.S.*, 804 F.2d 964, 966 (6th Cir. 1986); *Willis v. Sec'y of HHS*, 727 F.2d 551, 554 (6th Cir. 1984).

The evidence submitted to the Appeals Council for its review consists of treatment records from CDC Mental Health Services for the period January 10, 2012 to May 15, 2012 (Tr. 660-706) as well as a medical assessment and treatment records related to plaintiff's physical impairments (Tr. 618-59, 707-17). Plaintiff contends that the records show that she continued to be severely impaired in her ability to perform work activity and that observations by her treating psychiatrist support such a finding. Plaintiff argues the newly-submitted records are relevant because they show that the ALJ misinterpreted plaintiff's testimony to mean that she discontinued her treatment at CDC after only one session, and the records also show, consistent with those records that were before the ALJ, that plaintiff is disabled from performing all work activity.

The Commissioner argues that a Sentence Six remand is not warranted because even assuming the evidence submitted by plaintiff for consideration by the Appeals Council is new and

13

that plaintiff had good cause for not submitting it earlier, the evidence is not material. (Doc. 16 at 7-8). The Commissioner alleges there is no "reasonable probability" that the ALJ would have come to a different conclusion if she had been presented with the evidence. The Commissioner argues that the newly-submitted counseling records "merely confirm that [plaintiff's] depression continued to be a severe impairment - and continued to impose significant limitations - months after [the ALJ's] decision"; however, they do not suggest that plaintiff was disabled by her mental impairments from her alleged onset date in May 2008 through the date of the ALJ's February 9, 2012 decision. The Commissioner further argues that the evidence pertaining to plaintiff's physical impairments appears to undermine plaintiff's argument that her mental impairments were debilitating because the records regularly describe her as "pleasant" and "cooperative." (*Id.* at 7, citing Tr. 643, 651, 658).

The Court finds that a Sentence Six remand is warranted for consideration of the mental health records submitted by plaintiff. First, the majority of the mental health records are clearly new in that they post-date the ALJ hearing and the ALJ's decision. Plaintiff's initial mental health evaluation at CDC occurred two weeks before the ALJ hearing, but the assessment is properly characterized as new evidence because it was not signed by the social worker who prepared it until after the ALJ issued her decision. (Tr. 660-74). There is also good cause for plaintiff's failure to submit this evidence before the ALJ issued her decision because the "evidence was simply not available" at that time. *Fazio v. Heckler*, 750 F.2d 541, 542-543 (6th Cir. 1984); *Wilson v. Sec'y of H.H.S.*, 733 F.2d 1181, 1182-83 (6th Cir. 1984). Further, the Commissioner does not dispute that good cause exists for plaintiff's failure to present any of the newly-submitted evidence before the ALJ issued her decision.

14

The only question to be resolved is whether the evidence submitted by plaintiff following the ALJ hearing is material. Plaintiff contends that the evidence is material, in part, because it clarifies a mistake the ALJ made in her decision regarding plaintiff's mental health treatment history. The ALJ stated that plaintiff "began seeking help for her psychological problems recently, but she did not like her therapy program and stopped going to sessions." (Tr. 19). Plaintiff contends that the ALJ's reference to "recent[]" treatment was necessarily a reference to her treatment at CDC. Plaintiff alleges that the ALJ confused her testimony about therapy at CDC, which plaintiff started just before the ALJ hearing in January 2012 and which was ongoing, with plaintiff's testimony about her treatment sessions at Solutions in 2011, which plaintiff stopped attending because she did not agree with the treatment plan. (Doc. 11 at 18, citing Tr. 37-38). However, it appears the ALJ correctly described plaintiff's treatment history at Solutions in her decision. Plaintiff has not shown that the ALJ erred in this regard and that the newly-submitted evidence is material because it clarifies a mistake by the ALJ.

The newly-submitted evidence is nonetheless material because rather than showing a mere continuation in the severity level of plaintiff's mental impairments and limitations as alleged by the Commissioner, the evidence suggests that plaintiff's mental condition significantly deteriorated at some point before the ALJ issued her decision. The records include an initial diagnostic assessment performed by a licensed social worker at CDC, Joan Neuhaus, LISW, on January 10, 2012, shortly before the January 26, 2012 ALJ hearing. (Tr. 660-74). At that time, plaintiff reported that she felt extremely depressed, she cried daily, she did not want to get out of bed, she avoided bathing, and the only thing that kept her going was the prospect of removing her grandson from foster care. (Tr. 669). On mental status examination, plaintiff was preoccupied, her mood was depressed, angry and agitated, her speech was slowed, monotonous and soft, her

15

short term and long term memory was vague, and her concentration was limited. (Tr. 661-63). Plaintiff was diagnosed with Major Depressive Disorder and Personality Disorder NOS (Rule Out) and assigned a GAF score of 48, which is indicative of serious symptoms.[8] (Tr. 669-70).

Plaintiff was subsequently evaluated by CDC psychiatrist Dr. Arman Danielyan, M.D., on March 12, 2012. (Tr. 687-91, 699-701). Plaintiff complained of feeling depressed, having a very low energy level, sleeping one to two hours each night, feeling physically and mentally fatigued, crying occasionally, and for the most part feeling "numb" inside and having no interest in doing anything. (Tr. 699). On mental status exam, she was moderately cooperative, she had difficulties with staying focused, she displayed decreased rate, tone and volume of speech, her mood was depressed and anhedonic, and her affect was congruent with mood and constricted. (Tr. 700). Dr. Danielyan diagnosed plaintiff with Major Depressive Disorder, severe, and he assigned her a GAF score of 45. (Id.). Dr. Danielyan reported that plaintiff had a history of treatment resistant depression and that while her current combination of medications had worked in the past, she had been "feeling progressively more depressed" for the past several months. (Tr. 701). Dr. Danielyan recommended that her medications be adjusted by increasing her dose of Cymbalta, adding Seroquel for insomnia and depression, reducing her dose of Abilify, and adding a trial of Ritalin for her severe lack of energy. (Id.).

The new records show that plaintiff continued treating at CDC for her mental impairments and she attended several counseling and treatment sessions with her counselor, Ms. Neuhaus, and with Dr. Danielyan between February and May 2012. (Tr. 675-84, 692, 694, 698). Plaintiff continued to exhibit many depressive symptoms for which she was treated with psychotropic

---

[8] A GAF of 41-50 indicates "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." Kornecky, 167 F. App'x at 503 (citing DSM-IV-TR at 34).

medication. (*See, e.g.*, Tr. 682-83, 4/23/12- Dr. Danielyan diagnosed plaintiff with treatment resistant depression, assigned her a GAF score of 45, and recommended that she continue weekly therapy). The Commissioner argues that observations in physical health records generated during this time frame contradict plaintiff's claim of debilitating mental impairments because they regularly describe plaintiff as pleasant and cooperative. (Doc. 16 at 7, citing Tr. 643, 651, 658). However, the Commissioner's citations to the record do not fully support her argument. (*See* Tr. 658- describing plaintiff as having "[v]ery flat effect"). In any event, isolated cryptic notations by plaintiff's non-mental health providers are not substantial evidence that contradicts the findings of plaintiff's treating mental health sources.

Viewed as a whole, the records submitted by plaintiff's treating psychiatrist and counselor suggest the presence of serious psychological symptoms and indicate that plaintiff's depression may have worsened following her discharge from Solutions and prior to the date the ALJ issued her decision. The Court finds that if these records had been before the ALJ, there is a reasonable probability the ALJ would have reached a different disposition of plaintiff's disability claim. *Foster*, 279 F.3d at 357. Thus, the newly-submitted evidence is considered material for purposes of plaintiff's request for a Sentence Six remand. Accordingly, a remand pursuant to Sentence Six of 42 U.S.C. § 405(g) for further administrative proceedings in light of the evidence presented to the Appeals Council is warranted.

### III. Conclusion

Plaintiff has not shown that the ALJ erred by failing to find her disabled as a result of her mental impairments based on the evidence that was before the ALJ. Substantial evidence supports the ALJ's decision to give "great weight" to the opinion of consultative examining psychologist Dr. Rosenthal, who assessed moderate mental functional limitations. However,

plaintiff's request for a Sentence Six remand should be granted for consideration of new and material evidence pertaining to plaintiff's mental impairments that was not before the ALJ when she issued her decision.

**IT IS THEREFORE RECOMMENDED THAT:**

This matter be **REMANDED** pursuant to Sentence Six of 42 U.S.C. § 405(g) for further administrative proceedings.

Date: 12/11/14

Karen L. Litkovitz
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

I. RUTH PROFITT,
    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:13-cv-679
Spiegel, J.
Litkovitz, M.J.

### NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).